UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **THEODORE MOORE**<br>    **LA. DOC #211716**<br>**VS.**<br><br>**4TH JUDICIAL DISTRICT COURT,**<br>**ET AL.** | **CIVIL ACTION NO. 3:11-cv-1731**<br><br>**SECTION P**<br><br>**JUDGE DONALD E. WALTER**<br><br>**MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff, Theodore Moore, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 19, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Louisiana State Penitentiary, Angola; however, he complains that he was wrongly placed in lock-down in protective custody status while he was a pre-trial detainee incarcerated at the Ouachita Parish Corrections Center (OCC), Monroe, Louisiana in October-November, 2009. Plaintiff sued the Fourth Judicial District Court, OCC's Warden Brian Newcomer, and various Corrections Officers. He prayed for "relief."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

On September 19, 2011, plaintiff submitted copies of pleadings he filed in a civil action which is apparently pending in Louisiana's Fourth Judicial District Court. He also submitted copies of various orders and other documents associated with the suit. In the cover letter accompanying the pleadings, plaintiff implied that he was having difficulties litigating his claims in the Louisiana

courts. The pleadings and associated documents submitted by the plaintiff included:

      1. A letter from the Ouachita Parish Clerk of Court to the plaintiff dated October 18, 2010, concerning a letter sent to the Clerk from the plaintiff. According to the Clerk's letter, the plaintiff's "pleading" was being returned because he failed to either apply for *in forma pauperis* status or to pay the $250 filing fee. [Doc. 1-2, p. 2]

      2. A hand-written *pro se* "Petition [ ] for Damages" filed in the Fourth Judicial District Court on November 18, 2010 by the petitioner. In that proceeding he sued Sheriff Toney, Warden Newcomer, Officers Reed and Holly, three officers identified as "Officer John Doe" and OCC's insurer. The petition sought an unspecified amount of money damages and alleged that on October 11, 2009, plaintiff was the victim of an assault by a fellow inmate. Plaintiff complained that he, and not his assailant, was thereafter confined in lock-down for a period of 25 days. According to plaintiff, his confinement to lock-down violated his right to due process. He filed a grievance and on November 6, 2009, the jail administration responded to his grievance, advising him that he was in protective custody; he appealed and on November 9, 2009, he was released from protective custody. [Doc. 1-2, pp. 5-9]

      3. A statement from the Ouachita Parish Clerk of Court dated November 18, 2010, advising plaintiff that his pleadings were received but would be filed upon payment of the deposit for filing in the amount of $775. [Doc. 1-2, p. 3]

      4. An order dated December 3, 2010, denying plaintiff's motion to proceed *in forma pauperis*. [Doc. 1-2, p. 4]

      5. A "Deposit Receipt" dated June 27, 2011, showing payment of $212 received from Doshni Moore King as an "advance deposit" in *Theodore Moore v. Ouachita Correctional Center, et al.*, No. C-20104110. [Doc. 1-2, p. 1].

On October 11, 2011, the Clerk of this Court directed plaintiff to submit his civil rights complaint on the form approved for such actions by the Court. [Doc. 4]

On November 7, 2011, plaintiff submitted an amended complaint on the appropriate form. In this pleading he named the following defendants – Lt. Mary Reed, Sgt. Alloise Holley, Warden Richard Newcomer, Sgt. Hudson, Sgt. Britton, and Lt. Stewart.

He alleged that he was assaulted by inmate Antonio Hawkins on October 11, 2009. He alleged that following the assault, Sgt. Holley reported the incident to Lt. Reed and plaintiff was taken to the OCC infirmary and thereafter to the LSU Hospital in Monroe for treatment of his injuries. He complained that upon his return to the prison dorm he noticed that his assailant was still in the dorm; nevertheless, plaintiff was advised to pack his belongings and thereafter he was placed in " 'solitary confinement' in a cell without any proper drinking water, without an proper heating, without any outside yard privileges to walk around or exercise, and was without any pain medication for his injury ... and was without his prescription medication for high-blood pressure which was prescribed for him to take three times a day." According to plaintiff, he "endured these harsh conditions and treatments for over three weeks..." Plaintiff complained that his father came for a visit on October 17, 2009, however he was not allowed visitation. According to plaintiff, his father broke his hip upon his return home and consequently, plaintiff did not see his father, who died of complications some eight months later. Further, plaintiff was not allowed to attend his father's funeral.

Plaintiff complained that he was wrongly placed in lock-down since he did not violate any rules nor did he request protective custody. According to plaintiff, the facts of this incident were withheld from Warden Newcomer until the assailant was released from custody. Plaintiff complained that he was forced to sign "protective custody papers" in order to obtain his release from

protective custody. He further conceded that upon discovering the facts, Warden Newcomer apologized to plaintiff and then had plaintiff's assailant arrested and charged with aggravated assault. Plaintiff concluded by praying for unspecified "relief."

Plaintiff also provided a copy of the grievance he filed at OCC on November 2, 2009. In the grievance he complained of being confined in lock-down for a period in excess of 3 weeks in "protective custody." Plaintiff also complained that his assailant was allowed to remain in the dormitory while plaintiff was placed in lock-down against his will. The grievance was responded to on November 6, 2009. Sgt. Britton advised plaintiff, "You will have to sign a 'Release from Protective Custody' form. Ask your deputy for one. Turn it in after you've signed it and we will see what we can do." [Doc.5-2, p. 1]

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 §U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as

4

frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has provided the factual basis of his complaint. Further amendment is unnecessary.

**2. Limitations**

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a

complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. *See Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff complains about (1) his allegedly unlawful confinement to lock-down during the period from October 11 – November 9, 2009, and (2) the conditions of confinement he experienced while assigned to lock-down. He also implies that the defendants failed to protect him from the assault on October 11, 2009.

Plaintiff's failure to protect claim accrued on October 11, 2009; his unlawful confinement and conditions of confinement claims accrued no later than November 9, 2009, when he was released from lock-down. The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980). Plaintiff therefore had 1-year, or until October 11, 2010, to file a

failure to protect claim, and 1-year, or until November 9, 2010, to file his claims concerning his confinement in lock-down. Plaintiff's complaint was filed on September 19, 2011, well beyond the 1-year period of limitations and therefore, is subject to being dismissed as frivolous.

Plaintiff may claim that he is entitled to tolling of the limitations period during the pendency of his state court suit, however, the available evidence indicates that the state suit was filed on November 18, 2010, nine-days after the limitations period expired, and thus, plaintiff is not entitled to tolling based upon the filing of his civil suit in the Fourth Judicial District.

### 3. Equitable Tolling

Equitable tolling principles apply to civil rights cases filed under 42 U.S.C. § 1983. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir.1998). However, nothing herein suggests that this plaintiff is entitled to equitable tolling of the limitations period. Lack of knowledge about the law, does not justify equitable tolling. *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (finding ignorance of the law does not excuse a person's failure to comply with a statute of limitations); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir.1999) (holding plaintiff's unfamiliarity with the legal process and lack of legal representation during the filing period do not warrant equitable tolling). While disease or illness may warrant equitable tolling, the disease must be of such severity that it rendered the litigant unable to pursue his legal claims. See *Fisher v. Johnson*, 174 F.3d 710, 715 (1999) (referring to mental illness); *Smith v. Johnson*, 247 F.3d 240, 2001 WL 43520, at *3 (5th Cir. Jan.3, 2001) (per curiam) (unpublished) (Also referring to mental illness in the context of a *habeas corpus* claim and holding, "[A] prisoner's claim of mental incompetence may support tolling the AEDPA time limit if the mental impairment precluded the prisoner from effectively asserting his legal rights")

Based on the evidence currently available, plaintiff is not entitled to the benefits of equitable

7

tolling. *See Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir.2000) (discussing the availability of equitable tolling in the context of *habeas corpus* under the AEDPA and noting that neither ignorance of the law, lack of knowledge of filing deadlines, a prisoner's *pro se* status, lack of access to federal statutes and case law, incarceration, illiteracy, deafness, lack of legal training, nor actual innocence claims support equitable tolling of the AEDPA statute of limitations). See also *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.2002) ("[equitable tolling] will not be applied where the applicant failed to diligently pursue ... relief...").

### *4. Merits – Failure to Protect*

Even if his claims are not prescribed, plaintiff fares no better. In this complaint, plaintiff implies that the defendants failed to protect him from an assault at the hands of a fellow detainee. Of course, jail and prison "officials have a [constitutional] duty ... to protect inmates from violence at the hands of other prisoners." *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995); *Johnston v. Lucas*, 786 F.2d 1254, 1258 (5th Cir.1986). Detainees, such as plaintiff, and convicted prisoners look to different constitutional provisions for their respective rights to protection from violence and safe conditions of confinement. The constitutional rights of convicted prisoners are based on the Eighth Amendment's prohibition against cruel and unusual punishment. The constitutional rights of pre-trial detainees, such as the plaintiff, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). A pretrial detainee is a person who has been charged with a crime but has not yet been tried. *Bell v. Wolfish*, 441 U.S. 520, 523, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). As such, he is presumed innocent and therefore cannot be punished. *Bell*, 441 U.S. at 535 and, 537 n. 16. A detainee's due process rights are substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Hare,* 74 F.3d at 639.

To establish a §1983 failure to protect claim plaintiff must show that he was detained or incarcerated "... under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F .3d 530, 533 (5th Cir.1995). The defendants may be held liable for such episodic acts or omissions only if it can be shown that they had actual subjective knowledge of a substantial risk of harm to their detainee, but responded with deliberate indifference to that risk. *Hare*, 74 F.3d at 650; *Payne v. Collins*, 986 F.Supp. 1036, 1952 (E.D.Tex.1997). The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). Nothing in plaintiff's complaint suggests that the defendants were guilty of wanton conduct amounting to deliberate indifference. Nothing suggests that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Even assuming that the defendants were aware of such facts, nothing suggests that they actually drew such an inference.

Finally, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834. An inmate or a detainee must demonstrate both that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's safety. *Id.*; *Horton v. Cockrell*, 70 F.3d 397, 401. "Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir.2003). Plaintiff has not shown that any of the defendants was deliberately indifferent to his health or welfare and therefore, even if his claim is not time-barred, it should be dismissed for failing to state a claim for which relief may be granted.

*4. Merits – Protective Custody/Conditions of Confinement*

Likewise, plaintiff's claim that he was wrongly confined in protective custody and his claim concerning the conditions of confinement in the lock-down cell, are subject to dismissal for failing to state a claim even if these claims are not time-barred.

Plaintiff claims that his confinement in lock-down violated his right to due process. However, that allegation fails to state a claim for which relief may be granted. "Prison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir.1990); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir.2003). In the context of administrative lock-down, the Courts have clearly held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *E.g., Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir.1996) (affirming dismissal of claim that lock-down for suspected gang affiliation violated due process); see also *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). Here, plaintiff was placed in lock-down, not because he violated a prison rule, but rather because he was deemed to be in need of protective custody. Further, it appears that upon his filing of a written request to terminate protective custody, he was immediately transferred back to general population.

With regard to the conditions of confinement complaint, he likewise fails to state a claim for which relief may be granted. As previously noted, plaintiff complained that he was placed in "'solitary confinement' in a cell without any proper drinking water, without an proper heating, without any outside yard privileges to walk around or exercise, and was without any pain medication for his injury ... and was without his prescription medication for high-blood pressure which was

prescribed for him to take three times a day." According to plaintiff, he "endured these harsh conditions and treatments for over three weeks..." However, in his amended Section 1983 complaint [Doc. 5], plaintiff alleged no injuries resulting from his brief stay in lock-down. In the original complaint filed in the Fourth Judicial District plaintiff alleged only that he endured "sleepless nights," mental injuries, unspecified physical personal injuries, and pain and suffering. [Doc. 1-2, p. 8]

Title 42 U.S.C.§1997e(e), provides"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The term "prisoner" as used in the statute includes detainees, such as plaintiff, who have been accused but not yet convicted of crime. See §1997e(h). Further, the " 'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.' " *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).

Plaintiff has alleged only in conclusory fashion that he sustained some as yet unspecified physical injury as a result of his exposure to allegedly unconstitutional conditions of confinement. His failure to specify the nature of the physical injuries, however, is fatal to his claim for damages for emotional distress. In other words, even if his conditions of confinement claim is not time-barred, it is subject to dismissal.

*Recommendation*

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to

file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers at Monroe, Louisiana, January 12, 2012.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE